[No. 19323.   Department Two.   August 21, 1925.]

## E. T. DAVIS, *Respondent*, v. ASSOCIATED FRUIT COMPANY, *Appellant*.[1]

EVIDENCE (73)—BEST AND SECONDARY EVIDENCE—ORIGINAL WRITINGS AS BEST EVIDENCE. Where a private memorandum is offered only to be read into the record and with the privilege of substituting a copy, it is subject to objection as not the best evidence.

FRAUD (22)—EVIDENCE—SUFFICIENCY. Upon an issue as to fraud and collusion in the issuance of a certificate of inspection, by an officer, it is proper to instruct that the proof must be more than a mere preponderance and must be clear and convincing.

SALES (82)—PERFORMANCE OF CONTRACT—EVIDENCE—SUFFICIENCY. A verdict for the value of apples sold to defendant to be delivered at a certain place is sustained by evidence that they were labeled as to quantity and quality and state inspection obtained as required by the contract, that they were properly packed and were in good order when shipped, although evidently damaged in transit.

Appeal from a judgment of the superior court for Chelan county, John E. Porter, judge *pro tempore*, entered October 28, 1924, upon the verdict of a jury rendered in favor of the plaintiff in an action on contract. Affirmed.

*Hughes & Wallace*, for appellant.
*Crollard & Steiner*, for respondent.

HOLCOMB, J.—This is an appeal from a retrial in a case reversed and remanded for that purpose, reported in 128 Wash. 239, 222 Pac. 490.

When the case went down for retrial, appellant filed an amended answer setting up, as another affirmative defense, fraud and collusion on the part of respondent with the state deputy fruit inspector, who made the

[1]Reported in 238 Pac. 629.

inspection on the apples involved, in giving his certificate of inspection.

On the former appeal, the judgment was reversed because appellant had not been permitted to show that it had warehouses at Wenatchee and Cashmere, and none at Chelan Station where the fruit was brought. This situation was shown at the second trial, but the jury found that there had been no change in the contract as to the place of delivery, as was found by the jury at the former trial.

For reversal, appellant relies upon three grounds: Rejection of evidence offered by appellant; a certain instruction to the jury; and insufficiency of the evidence to justify the verdict.

The rejected evidence of which appellant complains consisted of a certificate of inspection by one Keefauver, an employee of a concern called the Moorehead Inspection Bureau, at Chelan, in 1921. The Moorehead Inspection Bureau inspected fruit for the Great Northern Railway Company in this state. The certificate was made out by Keefauver, who testified that the written portion of the document was in his handwriting, and was made out on the date it bears; that it was made out in the regular course of his duties; that independent of the document, he could not testify as to the condition of the fruit at that time; that it was his practice to make correct reports, and that he did so in that instance. Respondent objected to it upon the ground that it was incompetent, immaterial, irrelevant, not the best evidence, and self-serving.

What appellant attempted to do was not to introduce the instrument itself so that it could go to the jury, but to introduce a copy of it by reading it into the record. The witness who procured it, one Caswell, in whose custody it belonged, stated that the certificate was the property of the Great Northern Railway Company,

and must be returned to it. Counsel for appellant stated, in offering it, that it belonged to the railway company, and that it was desired that it be not permitted to go out of the possession of the railway and counsel for appellant; so that, when the time came to introduce it in the record, counsel for appellant wanted to read it into the record, and allow the witness to keep it; that he. had been advised by the railway company not to dispose of the record; that it was his duty to keep the document itself. During the testimony of Keefauver, counsel again made the statement that he was making the offer of the document in evidence (Exhibit B) with the understanding that a copy be substituted.

Appellant cites and quotes 14 Ency. of Evidence, 726 to 729, and Jones on Evidence (2d ed.), § 883, to the point that a private memorandum is admissible as evidence of the recollection of a witness as of the time the memorandum was made and when the events recorded were fresh in his mind, in connection with the testimony of the witness when shown that, at the time it was made, he knew them to be true; that the witness had no memory of the facts independent of the memorandum, and that the witness must testify as to its accuracy.

The above statements of the law are correct; but appellant did not offer the memorandum itself. He offered to read the memorandum into the record so as to obtain the contents of the document without the possibility of the opposing party and the jury examining the original document itself. What was offered was secondary evidence and not original evidence. The jury, under the offer, could not have taken the exhibit to the jury room. Counsel for respondent could not have examined, analyzed and discussed the original document.

There was no error in the rejection of the offer.

The jury were instructed that, as to the certificate of inspection by the state, in order to find the inspector guilty of fraud and collusion under the issue thereof, the proof must be more than a mere preponderance, it must be clear and convincing before the jury could find that it was fraudulently issued.

Appellant contends that it was error to instruct that the proof must be more than a mere preponderance in a civil case, in that it was sufficient to say that, while the proof of fraud must be clear and convincing and such as to satisfy the minds of the jury, if the jury believed from the preponderance of the evidence that the transaction was fraudulent, that is sufficient; citing *Adams v. Dempsey,* 22 Wash. 284, 60 Pac. 649, 79 Am. St. 933.

We have often said that, when fraud is relied upon, it cannot be found upon a bare preponderance of the evidence. *German - American Mercantile Bank v. Illinois Surety Co.,* 99 Wash. 9, 168 Pac. 772. An independent search of our own has discovered other cases where, it is true, the instructions were not generally attacked on that ground, where, upon issues of fraud, such instructions were given.

Thus, in *Hoptowit v. Brown,* 115 Wash. 661, 198 Pac. 370, the instruction on the issue of fraud began, "If you find from clear and convincing evidence," then stating the issues of fraud to be found, which instruction was neither attacked nor disapproved as to that statement.

In *Edwards v. Powell,* 121 Wash. 598, 210 Pac. 7, 212 Pac. 163, an instruction was complained of which read:

" 'In order to entitle the plaintiffs to a verdict in this cause, they must prove to your satisfaction by evidence, which to your mind, is clear and convincing that the defendant at or prior to the execution of the deed

to the land made either some or all of the following representations to the plaintiffs, or either of them.' "

Then followed a statement of the false representation issues.

In *Leibold v. Grosenbaugh,* 126 Wash. 502, 218 Pac. 258, it was stated that, "It is settled law that fraud, when it is charged, must be established by evidence which is clear and convincing." The verdict of the jury against appellant in that case was reversed because there was no evidence in the record to sustain the finding of the jury that appellant was guilty of fraud or misrepresentation.

It being settled law that "fraud, when it is charged, must be established by evidence which is clear and convincing," it is, of course, necessary that a trial court, trying the facts, bear that in mind, and that a jury be so instructed. The jury in the instructions were also charged that the certificate of the inspector might be impeached for fraud, bad faith, or failure to exercise honest judgment, and if they found from all the evidence in the case that the inspector was in fact guilty of fraud, bad faith, or failure to exercise his honest judgment in making the certificate, then they could not consider the certificate as evidence of the condition of the fruit at Chelan Station; and they were instructed as to what constitutes a preponderance of the evidence.

The instruction complained of was not erroneous.

As to the insufficiency of the evidence to justify any verdict for respondent, based largely on the failure of respondent to label the apples shipped from Chelan Station, and of the condition of the apples when they arrived at Cashmere about ten days later, it appears in the record that the written contract between respondent and appellant was that appellant agreed to

buy an estimated number of fifteen hundred boxes of Jonathan apples, the price fixed being $1.70 per box for extra fancy, $1.45 for fancy, and $1.20 for C grade. It was stipulated that they were to be delivered at Chelan Station when the buyer so directed. It was also agreed that the seller should harvest the crop, pack, grade, label, and box the same in a proper manner and at a proper time for shipment in accordance with the accepted methods and rules prescribed by appellant, all to be done "with state inspection."

It further appears that appellant furnished the labels to be used, which were first put upon the boxes other than the mere label on the box of the quality of the apples, as, "Fancy" or "C grade," as the case may have been. The labels furnished by appellant were put upon the boxes, except that appellant did not furnish any labels for C grade apples, as it did not have any such labels at the time. After respondent had placed the labels furnished by appellant upon the boxes, he was informed by the state inspector that such labels as were put thereon were illegal, and could not remain because the apples were not "Cashmere Apples"; and that so much of the label as contained the words "Cashmere Apples" or the "Cas-Co" label should be obliterated or removed. Thereupon the labels were obliterated by being scratched with a knife by an employee of respondent. The C grade apples were not labeled, but had the brands "C Grade" upon the boxes. So far as the contract goes, that appears to be all that was required. The contract did not require any particular kind of label except as to quantity and quality.

As to the grading and labeling conditions of the contract, we are satisfied that respondent showed sufficient excuse for not labeling otherwise than was done.

As to the condition of the apples, the contract called for state inspection, which was obtained. In addition to this there is evidence that the apples were in first class condition when packed and loaded at Chelan Station. While there is also evidence that, when they arrived at Cashmere ten days later, they were in bad condition, there is evidence that they had been unloaded from the car in which they were shipped from Chelan Station on account of "bad order" of the car, and transferred to another car by the railroad company, and were considerably longer in transit from Chelan Station to Cashmere than customary.

On the whole, we consider the evidence was sufficient to warrant the verdict of the jury in favor of respondent, and that no reversible error occurred.

The judgment is affirmed.

Tolman, C. J., Fullerton, Mackintosh, and Mitchell, JJ., concur.