[No. 27150. Department One. September 7, 1938.]

THE STATE OF WASHINGTON, *Appellant*, v. REX HARKNESS *et al., Respondents.*[1]

'Reported in 82 P. (2d) 541.

*Ralph E. Purves,* for appellant.

*Frederick B. Cohen* and *Marion Garland,* for respondents.

GERAGHTY, J.—Rex Harkness, Lyle Harkness, and P. L. Sanders were charged, in a single information, with the violation of § 3 of chapter 47, Laws of 1923, p. 134 (Rem. Rev. Stat., § 2509-3 [P. C. § 4071-3]).

In each of three counts, identical in language except as to dates, it is charged that the defendant Rex Harkness, intending to commit a crime,

". . . did, unlawfully and feloniously present to a druggist . . . a physician's prescription signed by one P. L. Sanders, a physician, for one half grain sulphate morphine and issued in the name of one O. H. Anderson, with intent by means thereof to procure from said druggist a narcotic drug . . . to-wit, sulphate morphine; and the said defendant did then and there sign said certificate as O. H. Anderson and did procure from said druggist one half grain sulphate morphine; the said defendant then and there knowing said physician's prescription to have been falsely made and forged in the name of one O. H. Anderson, . . ."

Lyle Harkness was charged in three counts, identical in language except as to dates and fictitious names, with similar offenses.

In six counts, identical in form except as to dates and names, it is charged that P. L. Sanders, with intent to commit a crime,

". . . did, unlawfully and feloniously falsely make a physician's prescription as set forth in Count I herein; the said defendant, P. L. Sanders, then and there know-

ing that the said O. H. Anderson was a fictitious person and that the said physician's prescription was to be forged and presented in the name of O. H. Anderson by the said Rex Harkness with an intent to procure narcotic drugs . . . to-wit, sulphate morphine; the said defendant, P. L. Sanders, then and there intending by means of said physician's prescription to procure from said druggist narcotic drugs . . . to-wit, sulphate morphine, contrary to the form, force and effect of the statute in such cases made and provided, . . ."

The information contained a thirteenth count, in which it is charged that the three defendants

". . . did on the dates mentioned in Counts I, II, III, IV, V and VI herein, conspire to accomplish a crime or unlawful purpose, to-wit: to procure narcotic drugs, as defined by Chapter 47, Laws of the 1933 [1923] session of the Legislature of the State of Washington, from druggists by aid of physician's prescriptions executed falsely by the said defendant, P. L. Sanders, and forged and presented by the said defendants, Rex Harkness and Lyle Harkness as set forth in Counts I, II, III, IV, and VI herein, . . ."

The defendants filed separate demurrers to the information, based upon the insufficiency of the facts charged to constitute a crime, and improper joinder. The court sustained the demurrers and entered an order of dismissal. The state appeals.

The question on appeal is whether the information is demurrable on any of the grounds specified.

█ The first twelve counts of the information, that is to say, the three counts against each of the respondents Harkness and the six counts against respondent Sanders, are, substantially, in the language of the statute, and sufficiently charge the respondents severally with its violation. The pertinent provisions of Rem. Rev. Stat., § 2509-3, follow:

"It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession with intent to

sell, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery who has complied with the regulations of, and is duly registered under the laws of the state of Washington, and the laws of the Congress of the United States. All such prescriptions shall be written with ink or indelible pencil, must be signed by the physician issuing the same, *and must contain the name and address of the person for whom prescribed* . . .

"Any person violating any of the provisions of this section *and any person who shall falsely make, forge or alter or knowing the same to have been falsely made, forged or altered shall present to any druggist a physician's prescription with intent by means thereof to procure from such druggist any narcotic drug* as defined in this act shall be guilty of a felony, . . ." (Italics ours.)

Clearly, under the language of this section, a physician who issues a prescription in the name of a fictitious person and delivers it to a person not named, knowing and intending that the person to whom it is given will, by a fictitious endorsement, procure narcotics from a druggist, in violation of the statute, must be held to have falsely made the prescription; carrying a falsehood on its face, the prescription is falsely made.

The statute makes it an offense for any person knowing a physician's prescription to have been falsely made to present it to a druggist with intent to procure a narcotic drug. The respondents Harkness are charged in the information with having presented the prescriptions to a druggist with intent, by means thereof, to procure narcotics, knowing the prescriptions to have been falsely made. They are properly charged under the statute.

We are of the opinion that the first twelve counts of the information, that is to say, the three against each of the respondents Harkness and the six against respondent Sanders, are good as against demurrer.

■ Under the rule announced in *State v. Brunn*, 145 Wash. 435, 260 Pac. 990, the counts charging the respondents could have been joined in a single information against them severally under Rem. Rev. Stat., § 2059 [P. C. § 9272], as being of the same class of crimes; and it would seem that this section also warrants the joining in one information of the counts against the respondent Sanders and the counts against the other respondents severally, because of the close connection between the issue of a false prescription and its presentation with knowledge of its falsity.

But we see no ground upon which the counts against both the Harknesses can be included in the same information. While they are charged with crimes of the same class, the crimes are alleged to have been committed independently and at different times. The crimes are related to each other only by the fact that the prescriptions used were issued by the same physician.

■ It was, doubtless, to justify what would otherwise be an improper joinder that the thirteenth count was embodied in the information. We find ourselves unable to agree with the appellant that the misjoinder is cured by the conspiracy charge. It is doubtful if the count is sufficient in form to charge a conspiracy. *State v. Scollard*, 126 Wash. 335, 218 Pac. 224, 32 A. L. R. 1082; *State v. McGonigle*, 142 Wash. 465, 253 Pac. 655. Reference is made in the count to counts one to six, inclusive, for a specification of the acts constituting the conspiracy. When these counts are examined, it will be seen that they charge separate substantive offenses without alleging any concert of action between the Harknesses.

If conspiracy appears, it is a dual conspiracy, one between Sanders and Rex Harkness, and another between Sanders and Lyle Harkness; in other words,

two conspiracies whose only connection is the fact that Sanders participated in both. If we are to assume that the information sufficiently charges two separate conspiracies, there is still a misjoinder.

"If, however, the charge of conspiracy in the indictment is merely that all the defendants had a similar general purpose in view, and that each of four groups of persons were co-operating without any privity each with the other, and not towards the same common end, but toward separate ends similar in character, such a combination would not constitute a single conspiracy, but several conspiracies, which not only could not be joined in one count, but not even in one indictment. Section 1024, R. S.; *McElroy v. U. S.*, 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355, *Frohwerk v. United States*, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561; *United States v. Clark* (D. C.) 125 Fed. 92." *United States v. McConnell*, 285 Fed. 164.

Since there was a misjoinder of parties, the demurrer to the information was properly sustained by the trial court, and its order of dismissal must be affirmed.

STEINERT, C. J., MAIN, and SIMPSON, JJ., concur.

HOLCOMB, J. (dissenting)—The foregoing opinion correctly decides that the first twelve counts of the information, that is to say the three counts against each of respondents Harkness and the six counts against respondent Sanders, are substantially in the language of the statute and sufficiently charge respondents severally with its violation.

The crimes were purely statutory offenses, and it seems to me there could be no other determination upon those counts under our statute as to joinder of counts and our decisions in *State v. Brunn*, 145 Wash. 435, 260 Pac. 990, and many subsequent cases.

I shall not dispute the decision that count thirteen, a conspiracy charge, is not sufficient in form to charge such crime under the decisions cited in the opinion.

All that respondents urged below and contend on appeal is that all those counts were insufficient to charge offenses upon the ground that there is a distinction between prescriptions which were falsely made and prescriptions which are forged and altered. The majority in this case decides that those counts charged crimes under the statutes set out, with which I heartily agree.

It is the general rule in criminal prosecutions that any count in an indictment or information may stand or fall alone, and the failure of one count to allege a crime sufficiently does not mean that all other counts which may be joined therewith must also fail.

This decision is contrary to that in *State v. Blackley*, 191 Wash. 23, 70 P. (2d) 799, a prosecution for manslaughter, a very serious felony, which is our very latest case on such questions, without discussion.

In that case it was contended:

"(1) That the offense must be joint; that is, it must be committed by the two defendants acting together, and not by the two defendants acting separately.

"(2) That there must be a conspiracy, or at least concert of action, between the defendants.

"(3) That defendants may not be joined in one information or indictment, if evidence against one is not admissible as against the other defendant."

We overruled those contentions and, among other things, said:

"The rule is that, where but one crime is charged in the indictment or information, all who participate in its consummation may be joined as defendants in the same information, even though their contributions to the result may be by different methods or acts. [Citing cases.]"

We there approved *Elliott v. State*, 26 Ala. 78, saying:

" 'The general rule as to the joinder of defendants, as laid down in works of good authority, is, that where

the same evidence, as to the act which constitutes the crime, applies to two or more, they may be jointly indicted.—*Commonwealth v. Elwell*, 2 Met. 190. If the offence arise out of the same act, though the parties stand in different relations, they may be joined. If several be engaged in the commission of the same offence, though each may act a different part in the commission of that offence, they may be joined. 1 Waterman's Archb. Cr. Pl. 96; Wharton's American Cr. Law 110.' "

It being determined that twelve counts of the information alleged sufficient facts under our statute to constitute crimes, it is unimportant that the thirteenth did not.

I am willing to concede that the thirteenth count was bad, but the other twelve are good as decided by the majority, and the accused should be placed upon trial as to those offenses.

For these reasons, I dissent.