[No. 27586. Department Two. December 1, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v. REX HARKNESS *et al., Appellants.*[1]

[1]Reported in 96 P. (2d) 460.

*Frederick B. Cohen* and *Adam Beeler,* for appellants.

*Ralph E. Purves,* for respondent.

JEFFERS, J.—In January, 1938, defendants in the actions now before us were, by the prosecuting attorney for Kitsap county, charged in a single information, in six different counts, with illegally procuring narcotics, in violation of Rem. Rev. Stat., § 2509-3 [P. C. § 4071-3]. Dr. P. L. Sanders was also charged in the same information with having illegally made the prescriptions. The counts in the first information, in so far as these defendants are concerned, were in the

same language, except as to names and dates, as the language in the informations now before us.

Defendants demurred to the first information, claiming that the information did not charge a crime. The demurrer was sustained by the lower court, and, the state having elected to stand on its complaint, the action was dismissed, and the state appealed. This court affirmed the judgment, on the ground of misjoinder of parties, but we specifically stated in the opinion that the information properly charged the defendants with a crime under the statute. *State v. Harkness,* 196 Wash. 234, 82 P. (2d) 541.

The prosecuting attorney then, by separate information, charged each of the defendants with a violation of Rem. Rev. Stat., § 2509-3. In count one of the amended information in case No. 13964, now before us, Lyle Harkness was charged as follows:

"That he . . . did unlawfully and feloniously present to a druggist . . . a physician's prescription signed by one P. L. Sanders, a physician, for one half grain sulphate morphine and issued in the name of one R. C. Love, with intent by means thereof to procure from said druggist a narcotic drug . . ., to-wit, sulphate morphine; and the said defendant did then and there sign said certificate as R. C. Love and did procure from said druggist one half grain sulphate morphine; the said defendant then and there knowing said physician's prescription to have been falsely made and forged in the name of R. C. Love . . . ."

Counts two and three of the information were in the same language as count one, except that the prescriptions were issued in the name of Jerry Donovan, and on different dates.

In case No. 13965, defendant Rex Harkness was charged in three counts, in the same language as that used in the counts in the Lyle Harkness information, except that, in the Rex Harkness case, in all three

counts the prescriptions were issued in the name of Ray Douglas, and on different dates.

A demurrer was interposed to the amended information in each case, and overruled. The defendants were granted separate trials, and thereafter Lyle Harkness, after a plea of not guilty had been entered, went to trial, and on April 14, 1939, was, by a jury, found guilty on counts one and three of the amended information.

Upon the return of the verdict, the prosecuting attorney immediately filed an habitual criminal charge against Lyle Harkness, by a supplemental information, using as a basis for such charge the judgment just rendered in Kitsap county, a judgment of the superior court of the state of Washington for Okanogan county, rendered June 29, 1925, wherein a person by the name of Lyle Harkness was convicted of burglary in the second degree, and a judgment rendered in the superior court for Chelan county, on March 21, 1925, wherein one Lyle Harkness was convicted of the crime of unlawfully having in his possession narcotics, with intent to sell same.

After the filing of this supplemental information, defendant was placed on trial before the same jury on the habitual criminal charge, and thereafter, on April 14, 1939, was found guilty on this charge. Alternative motion in arrest of judgment and for new trial was made and denied, and thereafter, on April 24, 1939, judgment was entered, adjudging the defendant guilty of the substantive offense and also of the habitual criminal charge, and defendant was sentenced to life imprisonment in the state penitentiary at Walla Walla. Defendant has appealed.

Defendant Rex Harkness, after a plea of not guilty, went to trial on the amended information in case No.

13965, and thereafter was found guilty on counts one and three of the information.

Immediately upon the return of the verdict in this case, habitual criminal charges were filed against Rex Harkness, by a supplemental information, and he thereafter went on trial and was convicted of this charge. As no error is based upon the conviction of this defendant on the habitual criminal charge, no further reference will be made thereto. Alternative motion in arrest of judgment and for new trial was made and denied, and on April 24, 1939, defendant was sentenced to the state penitentiary at Walla Walla for life. Defendant has appealed.

It was stipulated that these two appeals would be submitted on one statement of facts and one brief.

The error assigned relative to the Rex Harkness case pertains only to his conviction on the information charging him with a violation of the narcotics act.

■ The first assignment of error is based upon the court's refusal to sustain a demurrer to the information in each case charging a violation of the narcotics law. It is contended here, as it was contended in *State v. Harkness, supra,* that there is a clear distinction between the false making of an instrument and the making of a false instrument, and that the provision in Rem. Rev. Stat., § 2509-3, that

" . . . any person who shall falsely make, forge or alter or knowing the same to have been falsely made, forged or altered shall present to any druggist a physician's prescription,"

applied only to a false making of an instrument, as distinguished from the making of a false instrument.

Appellant Rex Harkness admits that the evidence is sufficient to prove that he signed the name of Ray Douglas to the prescription referred to in counts one and three, and admits that these particular prescrip-

tions were made out to him in the name of Ray Douglas.

Appellant Lyle Harkness admits that the prescription referred to in count one was made out to him in the name of R. C. Love, and was signed and endorsed by him as R. C. Love; and admits that the prescription referred to in count three was made out to Jerry Donovan, for Jerry Donovan, and that appellant signed the name of Jerry Donovan on the prescription.

Rem. Rev. Stat., § 2509-3, in so far as pertinent, provides:

"It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession with intent to sell, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery who has complied with the regulations of, and is duly registered under the laws of the state of Washington, and the laws of the Congress of the United States. All such prescriptions shall be written with ink or indelible pencil, must be signed by the physician issuing the same, and must contain the name and address of the person for whom prescribed . . .

"Any person violating any of, the provisions of this section and any person who shall falsely make, forge or alter or knowing the same to have been falsely made, forged or altered shall present to any druggist a physician's prescription with intent by means thereof to procure from such druggist any narcotic drug as defined in this act shall be guilty of a felony, . . ."

The contention made herein by appellant under assignment of error No. 1 was presented in the former case of *State v. Harkness, supra,* and we there held the information properly charged a crime. We are satisfied with our former decision, and we are therefore of the opinion the information in each of the cases being considered herein charged a crime, and that the trial court properly overruled the demurrer in each case.

Under assignment of error No. 2, appellant Rex Harkness claims the court erred in refusing to give requested instruction No. 5, and under assignment of error No. 3, this appellant contends the court erred in refusing to give requested instruction No. 11.

Appellant Lyle Harkness, under the fourth and fifth assignments of error, contends the court erred in refusing to give requested instructions Nos. 4 and 9.

Assignment of error No. 6 is based upon the exclusion by the court of evidence to prove that Dr. P. L. Sanders was treating the appellants in the course of his professional practice, and that the narcotics were obtained for their personal use in pursuance of such treatment.

Instruction No. 5, as requested by appellant Rex Harkness, is the same as instruction No. 4 requested by appellant Lyle Harkness, and is as follows:

"I instruct you that the word 'patient' means one who applies to a physician for the alleviation of pain or disease.

"It is the duty of a physician to relieve the pain and suffering of his patient when such relief can be effected by the use of morphine in quantity proportionate to the needs of such patient.

"In this case there is a presumption that the defendant, P. L. Sanders, as a physician was acting in the course of his practice as a doctor, and that he was prescribing morphine for a legitimate purpose, and before this presumption can be overcome you must be satisfied by competent evidence to the contrary beyond any reasonable doubt."

Instruction No. 11, as requested by appellant Rex Harkness, is the same as instruction No. 9 requested by appellant Lyle Harkness, and provides:

"It is not the purpose or intent of the law to prohibit physicians from administering morphine to their patients, or to establish any hard, fast or legitimate

rule by which the judgment of the physicians in such cases is to be governed.

"In administering morphine to his patients, the law requires that the physician, in the course of his professional practice, only administer it for legitimate purposes and in such quantities as are proportionate to the needs of the patient. The law requires that the physician shall act in good faith. He is not required or expected to withhold his services, advice and assistance from his patient under penalty of being convicted for an error of judgment. While on the other hand, he is not permitted to use his profession as a subterfuge for unlawfully disposing of morphine."

We think the trial court properly refused to give the requested instructions and properly excluded the evidence of treatment by Dr. Sanders. Appellants' contention, in effect, is that, because they are narcotic addicts, they had a right to procure the issuance of prescriptions in false and fictitious names, and thereafter, by endorsing the false and fictitious names, procure the drug. We do not think any such act is contemplated or authorized by the statutes, or that one, because he is such an addict, has any more right to procure morphine by such a false prescription, even though it be issued by a doctor from whom he is taking treatment, than any other person. The law prescribes the manner in which narcotic drugs may be procured, and plainly, we think, appellants, when they procured a prescription to be issued to a fictitious person, and then endorsed that name on the prescription to obtain the drug, violated the statute. We so stated in *State v. Harkness, supra.*

An addict is not, by this statute, deprived of obtaining, in a proper manner, such amounts of morphine as a physician may deem necessary for his well being.

Appellant Lyle Harkness contends the court erred in refusing to give requested instruction No. 7, which reads as follows:

"It is not the purpose or intent of the law to deprive morphine from those who are entitled to its use. The narcotic law of the state of Washington is not aimed at the use of drugs by those whose treatment requires that they obtain the drug. The state narcotic law is intended as a regulation to prevent the obtaining of narcotics either by those who are not entitled to obtain them, or by those who intend to obtain the drugs for the purpose of sale."

Under this assignment and assignment No. 8, appellants again contend that they were guilty of no crime in having procured narcotics for their own use, even though procured by them under names not their own.

What we have said herein we think also answers this contention. The statute authorizes narcotic drugs to be procured in only one way, and this regardless of who the person is or what his condition may be. As we have stated, this statute does not prevent a physician from administering to a patient such quantities of morphine or other drugs as his needs may require. We think the trial court properly refused to give requested instruction No. 7.

It is next contended by appellant Lyle Harkness that the court erred in giving instruction No. 6, and in refusing to give requested instruction No. 12.

By instruction No. 6, the jury were told that even though there was a person by the name of Jerry Donovan, if they found that the prescription made out in the name of Jerry Donovan was used and presented by appellant, and that he used the name of Jerry Donovan in procuring such prescription, and himself procured narcotics thereunder, then Jerry Donovan, for the purpose of such prescription, was a false and fictitious name.

Requested instruction No. 12 provides:

"If you find that Dr. P. L. Sanders made out the prescription as alleged in count III in the name of

Jerry Donovan and intended that the said prescription should be presented and indorsed by Jerry Donovan, and if you further find that Lyle Harkness presented the prescription for Jerry Donovan and obtained the narcotics for him then you must find the defendant not guilty as to count III."

It is contended by appellant that the prescription was made out for Jerry Donovan, and that appellant signed the prescription as agent for Jerry Donovan, and procured the drug for Jerry Donovan.

Even if we should concede, which we do not, that narcotic drugs could be procured in this way, still there is no evidence to support this claim of agency.

It appears from the testimony of Mr. Ames, the druggist who filled this prescription, that it was presented by appellant Lyle Harkness, whom he knew as Jerry Donovan, and that appellant signed the name of Jerry Donovan to the prescription and procured the drug.

It appears from the testimony of Dr. Sanders, who signed this prescription, that he had known appellant Lyle Harkness sixteen or seventeen years; that he was treating appellant and his brother Rex, and that they requested him not to write their names in the prescriptions, but to write in names they would furnish him; that he had made out other prescriptions in the name of Jerry Donovan, and had given them to appellant Lyle Harkness. It does not appear from the testimony that he was requested by Jerry Donovan to make out this prescription, or that he was ever told it was for Jerry Donovan. The doctor did, however, finally state: "Well, he was acting as Donovan's agent or friend." It also appears that the doctor had once treated a man by the name of Jerry Donovan.

We think it apparent from this testimony that there was no evidence which would have warranted the court

in giving the requested instruction. We are of the opinion instruction No. 6, as given, was correct, and that the court properly refused to give requested instruction No. 12.

The last assignment of error is based upon the refusal of the court to withdraw from the consideration of the jury the habitual criminal charge. We think this contention must be sustained.

The habitual criminal charge was based upon the conviction of the narcotics charge and two claimed prior convictions, one purporting to be a judgment of conviction on the charge of burglary, rendered by the superior court for Okanogan county, the other being a judgment of conviction by the superior court for Chelan county on a narcotics charge. The conviction in the case now before us and the Chelan county conviction were admitted, but the conviction in Okanogan county was denied. The plea of not guilty to the habitual criminal charge put in issue, and required the state to prove, beyond a reasonable doubt, all the necessary elements of the habitual criminal charge. It certainly was necessary that the state not only prove that there was a judgment rendered in Okanogan county, such as referred to in the supplemental information, but also that the Lyle Harkness therein named was the same person as the Lyle Harkness on trial in this action.

A certified copy of the Okanogan county judgment, which showed the conviction of a person by the name of Lyle Harkness, was admitted in evidence in this case. The only testimony, in addition to the identity of names, which it is claimed tended to prove that the Lyle Harkness named in the Okanogan county judgment and this appellant are the same person, is a claimed admission made by appellant when testifying

in behalf of his brother Rex Harkness, in the action wherein Rex was defendant.

We have carefully examined the testimony of appellant, as read into the record by the reporter from her notes taken in the Rex Harkness trial, and we are of the opinion there is nothing in that testimony tending to show that this appellant is the same person as the Lyle Harkness named in the Okanogan county judgment.

We are also of the opinion this testimony was not admissible in the instant case, under our decision in *Duffy v. Blake,* 91 Wash. 140, 157 Pac. 480.

Neither do we think it was proper for the reporter to read her notes into the record. *Duffy v. Blake, supra; Davis v. Associated Fruit Co.,* 135 Wash. 614, 238 Pac. 629; *Preston v. Metropolitan Life Ins. Co.,* 198 Wash. 157, 87 P. (2d) 475. *State v. Lindsey,* 150 Wash. 121, 272 Pac. 72, is not applicable herein, as, in the cited case, the admission claimed to have been made by Lindsey was made upon cross-examination in his own case.

Counsel for appellant moved for a directed verdict at the close of the state's case, contending there was a failure of proof that appellant was the same person as the Lyle Harkness named in the Okanogan county judgment, and that identity of names was not sufficient to prove identity of the person.

It is difficult to determine from the record on just what the court based its action in denying appellant's motion, but it seems to have been upon the theory that the trial court was of the opinion that the name of appellant being the same as the name in the Okanogan county judgment, when considered in connection with appellant's claimed admission, was sufficient proof of identity of the person to go to the jury. We believe this is the first case in which the question has been

squarely presented to this court, of whether or not identity of names alone is sufficient proof of a former judgment of conviction to warrant the trial court in submitting that question to the jury, where the former judgment inheres in and increases the penalty of the substantive crime charged. We have had before us two cases touching this question in some measure, but in both of these cases there was some testimony admitted and held competent and material, in addition to the identity of names.

In *State v. Le Pitre*, 54 Wash. 166, 103 Pac. 27, the record of the former conviction was received without objection. It is also stated in the opinion that a witness competent to testify proved the identity of appellant.

In *State v. Magnusson*, 128 Wash. 541, 223 Pac. 325, the judgments of prior convictions were held properly admitted, but it appears therein that, upon cross-examination, appellant admitted that he had been twice convicted prior to the case on trial. The question was asked and answered without objection. In the cited case, however, we stated:

"If previous convictions of unlawful possession of intoxicating liquor had the legal effect of aggravating the felony of bootlegging into a higher crime, calling for a greater punishment than the single offense of bootlegging, it may well be doubted that this attempted proof of appellant's two previous convictions was sufficient to identify him as the persons previously so convicted."

See, also, *State v. Dale*, 115 Wash. 466, 197 Pac. 645.

There are two lines of decisions, one holding that identity of names alone is sufficient to make a *prima facie* case of identity of the person, the other holding that identity of names alone is not sufficient proof of identity of person to warrant the court in submitting to the jury a prior judgment of conviction, but that, in

addition to the identity of names, it must be shown, by evidence independent of the record of former conviction, that the person whose former conviction is proved is the defendant in the present action. We think the latter is the better rule, and supported by the weight of authority.

"The record of a former conviction is not sufficient alone to show that defendant in the present prosecution was formerly convicted. It must be shown by evidence independent of the record of the former conviction that the person whose former conviction is proved is the defendant in the present prosecution. The state has the burden of producing evidence to prove such identity." Underhill's Criminal Evidence (4th ed.), 1500, § 829.

See, also, 2 Wharton's Criminal Evidence (11th ed.), § 852.

In *State v. Smith,* 129 Iowa 709, 106 N. W. 187, 4 L. R. A. (N. S.) 539, the court stated:

"We grant that the identity of names may be some evidence of the identity of persons; but, standing alone, it is not enough. Every fact essential to the infliction of legal punishment upon a human being must be proven beyond a reasonable doubt. And it would amount to a travesty to say that a *prima facie* case for an increased term of punishment could be made out against John Smith, being tried in Linn county, by showing isolated facts that a man passing under that name had at some time or other been convicted in the courts of Lee county."

*State v. McCarty,* 210 Iowa 173, 230 N. W. 379.

In *Hall v. State,* 121 Md. 577, 89 Atl. 111, the court stated:

"And this averment of a prior conviction can only be sustained by the production of the record; or a duly authenticated copy of it, sustained by proof of the identity of the person on trial with the one described in the former indictment."

*State v. Findling,* 123 Minn. 413, 144 N. W. 142, 49 L. R. A. (N. S.) 449; *State v. Taylor,* 323 Mo. 15, 18 S. W. (2d) 474; *Potter v. State,* 128 S. W. (2d) (Tex. Crim. App.) 817.

We are of the opinion that, the state having failed to prove that appellant was the same person named in the Okanogan county judgment, it must be held there was a failure of proof to sustain the habitual criminal charge, and that appellant's motion for a directed verdict should have been granted.

For the reasons herein assigned, the judgment in the case of State v. Rex Harkness is affirmed. The judgment in the case of State v. Lyle Harkness is reversed, in so far as the habitual criminal charge is concerned, with instructions to dismiss that charge. The judgment is affirmed in so far as it adjudges appellant Lyle Harkness guilty of the substantive offense of illegally procuring narcotics by false physician's prescription; but in view of the fact that the judgment entered carries but one sentence, to-wit, life imprisonment, imposed because of the conviction on the habitual criminal charge, the trial court is further instructed to resentence appellant Lyle Harkness on his conviction of the substantive offense only of procuring narcotics illegally.

BLAKE, C. J., STEINERT, BEALS, and GERAGHTY, JJ., concur.