Application for a Writ of Habeas Corpus of Robert DRAPER, Petitioner,

v.

B. J. RHAY, as Superintendent of Washington State Penitentiary at Walla Walla, Washington, and State of Washington, et al., Respondents (two cases).

Application for a Writ of Habeas Corpus of Raymond LORENTZEN, Petitioner,

v.

B. J. RHAY, as Superintendent of Washington State Penitentiary at Walla Walla, Washington, Respondent.

Nos. 1714, 1718, 1798.

United States District Court
E. D. Washington, S. D.

Feb. 18, 1964.

Robert Draper and Raymond Lorentzen, pro se.

John J. O'Connell, Atty. Gen., Ralph Olson, Stephen Way, Asst. Attys. Gen., for respondents.

POWELL, Chief Judge.

These three cases have been consolidated for the purpose of trial only and will be governed by this one opinion. In Causes Nos. 1714 and 1798 petitioner Robert Draper seeks a writ of habeas corpus. The same relief is asked by petitioner Lorentzen in No. 1718.

The petitioners have been before the courts numerous times. Their trial was held in the Superior Court of Spokane County on September 12, 1960 and resulted in their conviction on two counts of robbery. For a résumé of the evidence adduced at the trial see the findings in the appendix to the dissenting opinion of Mr. Justice White in the case of Draper, et al. v. State of Washington, 372 U.S. 487, at 509, 83 S.Ct. 774, 9 L.Ed.2d 899. Other reported cases involving these petitioners are:

State v. Long, 58 Wash.2d 830, 365 P.2d 31,

Draper v. Rhay, 9 Cir., 310 F.2d 691, and

Draper v. Rhay, 9 Cir., 315 F.2d 193.

While the petitioners' appeal from the original conviction is still pending it has been determined that state court remedies are exhausted as to the contentions set forth in this opinion. These consolidated cases have been fully tried on the contentions of the petitioners.

The petitioners are in custody under judgments and sentences entered September 30, 1960 in the Superior Court of the State of Washington in and for Spokane County. They were found guilty of two counts of robbery and sentenced to twenty years on each count, the sentences to run consecutively. Petitioners claim that they were denied due process at their trial in violation of their Fourteenth Amendment rights. Their contentions are as follows:

1.  They were placed in jeopardy twice for the same offenses.

2.  They were denied the right to counsel.

3.  Petitioner Draper was illegally arrested.

4.  They were illegally detained in custody.

5.  The judgments and sentences are illegal as under the wrong statute.

6.  The statute under which they were sentenced was repealed prior to their sentence.

7.  The information on which they were tried was void.

8.  The trial court lost jurisdiction when it proceeded to try defendants on two charges of robbery when it should have required the state to elect on which one it

would proceed and to proceed on one only.

9. The trial court lost jurisdiction when it permitted the state to present evidence of two unrelated crimes to the same jury.

10. The trial court lost jurisdiction when it failed to appoint counsel more than 24 hours before trial.

11. The trial court lost jurisdiction when it did not appoint separate counsel for each defendant.

The facts as found from the evidence and the exhibits are as follows:

On July 5, 1960 a complaint was filed in the court of Honorable Gordon S. Lower, Justice of the Peace, Spokane Precinct, charging defendants James D. Long and Raymond L. Lorentzen with robbery in two counts. The first count charged robbery of the TraveLodge Motel, and the second count charged robbery of the Downtowner Motel Inc., a corporation. A warrant was issued on the same day based on the Justice Court complaint.

On July 8, 1960 a complaint was filed in the same court charging defendant Draper with aiding and abetting Long and Lorentzen in the two robberies. The charges were in two counts. The complaint describes the ownership of the property taken in the same manner as the previous complaint. A warrant was issued on that complaint.

Draper was arrested in Seattle on the warrant issued by the Spokane Justice of the Peace. He was transferred to Spokane. The warrant was first transmitted to Seattle by telegram. The certified copy was mailed there. The original was served by Detectives Simons and Bury from Spokane on Sunday, July 10, 1960. He was not taken before any committing magistrate or judicial officer of any kind before he was removed to Spokane. His first appearance was before Justice of the Peace Lower on Tuesday, July 12, 1960, at which time he was informed of the charge against him, of the amount of bond, his right to a lawyer and that he did not need to make any statements.

The case was then continued to August 12, 1960. Prior to that date, on August 3, 1960 the Prosecuting Attorney filed an information in the Superior Court. The Justice Court proceedings were dismissed on August 12, 1960. The docket bears the notation "Dismissed O. M. Pros. Information Direct."

The same procedure was followed in the Lorentzen and Long cases in Justice Court, except that their first appearance was on July 5, 1960. That complaint was dismissed on August 5, 1960. That docket bears the same notation "Dismissed O. M. Pros. Information Direct." Defendants were not tried in Justice Court. Judge Lower explained that the notation at the top of Exhibit 4 in Cause No. 1718 and Exhibit 5 in Cause No. 1798, the portion of the docket sheet above the double line showing a penalty assessed, refers to the preceding case on that docket page. It does not refer to any of the parties here.

On August 4, 1960 the defendants were arraigned on the information which charged them all jointly in two counts with the two robberies. The information was substantially in the same words as the complaints previously filed against the defendants Long and Lorentzen. All defendants were represented by the same attorney, Thomas F. Lynch, at the arraignment. They were each asked "Are each of you represented by Mr. Lynch present in court?" All answered in the affirmative and entered pleas of not guilty to the two counts.

The case was called for trial on September 12, 1960. Attorney Thomas F. Lynch had been promised a fee by a Mrs. Petty and on the basis of that promise had appeared, prepared the case and started the defense on the first day of trial. He was not paid and asked to be relieved after the examination of five or six prospective jurors. Then at recess he prepared and filed oaths of indigency for the three defendants. The court then appointed him to represent the defendants. At no time prior to that were the defendants advised of record that they were entitled to an attorney at pub-

lic expense if they could not pay the fee. They did not at any time appear without an attorney in the Superior Court and they did not appear with an attorney at any time in the Justice Court.

There is no evidence of any delay in the trial. Mr. Lynch and the court accomplished the transition from retained counsel to appointed counsel with no lag in the proceedings. The trial continued with Mr. Lynch representing all three defendants as appointed counsel. None of them took the stand. Mr. Lynch did not find during the trial there was any conflict of interest between any two or more of the defendants that interfered with his representing all of them. The jury's verdict of guilty as to both counts was returned September 14, 1960 as to all defendants. The record is silent as to any protest by any of the three defendants against the representation of Mr. Lynch at any time until after the verdict was returned and until the time of the presentation of the application for a free transcript on appeal.

The foregoing statement of facts will constitute findings of fact and there will be no necessity for making further findings on the entry of the order based on this opinion.

The contentions, eleven in number, are set forth above. They will be grouped according to subject matter and numbered in the same order they appear earlier. My conclusions as to the contentions are as follows:

## A. 1. DOUBLE JEOPARDY.

Petitioners argue that they were twice placed in jeopardy for the same offense. They say they were placed in jeopardy when the complaints were filed in the Justice Court, and they were tried there, and when they were later charged in the Superior Court by the same allegations and tried before a jury and convicted. The appearance before the Justice of the Peace in a felony case is governed by RCW 10.04.030, which states as follows:

"Hearing—Judgment. On the return of any warrant issued by him, it shall be the duty of the justice to docket the cause, and unless continuance be granted, forthwith to hear and determine the cause, and either acquit, convict and punish, or hold to bail the offender, if the offense be bailable and prove to be one which should be tried in the superior court, or in default of bail, commit him to jail, as the facts and law may justify."

It is obvious from the exhibits filed in this cause that Justice Lower was sitting as a committing magistrate when petitioner Lorentzen appeared before him on July 5, 1960 and when petitioner Draper appeared before him on July 12, 1960. He continued the causes, admitting the defendants to bail if they could post it, and dismissed the complaints after the information was filed directly in the Superior Court.

This contention is not new. It was made in 1926 in the case of State v. Friedlander, 141 Wash. 1, 4, 250 P. 453. In that case the petitioner was charged with contributing to the delinquency of a minor. He was taken before the Justice of the Peace and during the trial the Justice of the Peace determined that the offense was within the jurisdiction of the Superior Court. The defendant was then bound over to the Superior Court and the Supreme Court of the State of Washingon stated as follows:

"* * * The statute is dual in its nature. It permits a justice's court, in one and the same proceedings to sit in the capacity of a trial court and as a committing magistrate, and to determine whether it will act in the one capacity or the other after the evidence against the accused is heard. If it concludes after hearing the evidence that the punishment it is empowered to impose is adequate to the offense, it may proceed as a court and inflict the punishment. If on the other hand, it concludes after hearing the evidence that the punishment it is empowered to impose is inadequate to the offense, it may proceed as a committing magistrate.

"Plainly, it was the view of the lawmaking body that jeopardy should attach, or should not attach, at the stage of the proceeding when it was necessary to make the determination, not at the time the examination was entered upon. We see no reason why this is not within the constitutional power of the Legislature. * * * "

I cannot find that the petitioners' argument of double jeopardy entitles them to any relief in this case. It is my conclusion from the testimony given by the Justice of the Peace and the exhibits introduced by the petitioners, being certified copies of certain of the Justice Court records, that the Justice of the Peace acted properly as a committing magistrate and that the charge as subsequently filed was proper, that the petitioners here were never placed twice in jeopardy under the Federal Constitution, which provides in part:

" * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; * * * " 5th Amendment United States Constitution.

The petitioners here had one trial. That trial was in the Superior Court of the State of Washington, for Spokane County. There was no trial in the Justice Court. They were tried in a court that had jurisdiction of the offense. The Justice Court did not have jurisdiction of the criminal offense but was empowered by the statutes of the State of Washington to issue the warrant and sit as a committing magistrate.

B. 2, 10 and 11. APPOINTMENT OF COUNSEL.

The petitioners were represented at the arraignment in the Superior Court by Attorney Thomas F. Lynch. This is shown by certified copy of the transcript of the proceedings before Honorable Raymond F. Kelly, Judge of the Superior Court. The affidavit of Mr. Lynch, and answers to interrogatories propounded by the petitioners to him, show that he did represent the petitioners at all times.

■ It is true that no attorney appeared for the petitioners in the Justice Court before the committing magistrate. There appears to be no necessity under the state law, and no necessity under the application of the Federal law to State Court proceedings, that an attorney appear and represent a defendant at the preliminary hearing.

■ There might be a violation of the constitutional rights of the defendants if in the preliminary hearing they were induced to give up one or more of their constitutional rights, such as the right to refuse evidence of self incrimination. In this particular case no contention is made and there is no showing that any of the petitioners were in any manner led into a position where they sacrificed any of their constitutional rights or privileges. No confessions were made, no statements against interest were ever made by any of the defendants and therefore no constitutional rights were violated by their denial of counsel at the preliminary stages in the case.

■ Petitioners contend that the appointment of one attorney to represent all three defendants was a denial of their constitutional right to counsel as guaranteed by the Sixth Amendment. They rely on Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). There the court held that it was a denial of due process to appoint one attorney for more than one indigent criminal defendant. There was an objection by Glasser to the appointment of one attorney for more than one defendant. It was a conspiracy trial where the interests of the individual defendants were obviously divergent. The court was early advised of a possible conflict of interest. In this case there is no evidence of a motion for severance. There is no evidence that any of the defendants at any time objected to all being represented by the same counsel. If the defendants or any of them had taken the stand and had testified adversely to one of the remaining defendants there might be evidence of a conflict of interest, but no evidence here appears that would

justify a criticism of the appointment of one attorney for all three of the defendants.

In the case of Wynn v. United States, 107 U.S.App.D.C. 190, 275 F.2d 648, (1960) the appellant and two others were charged with robbery in one count of an indictment. It also included a separate count charging the other two persons with another robbery committed the day before. The court could find no ground for reversal and stated the following in its opinion:

"* * * he was deprived of the effective assistance of counsel because during the trial his counsel entered an appearance also for the other defendants. Though it is hardly to be expected that appellant himself would be sufficiently aware of his rights in the matter to object, as Glasser, who was an attorney, did in Glasser v. United States, 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680, nevertheless no conflict of interests or detriment appears, as did appear in Glasser. * * * The added representation in the present case was assumed by counsel as a calculated move on his part to aid appellant in his defense; and the evidence is not so nicely balanced that we should assume detriment, which does not appear, due to the adoption by counsel of tactics designed to assist appellant." (275 F.2d 648, 649–650).

Joint counsel was held not to be error in Lebron v. United States, 97 U.S.App. D.C. 133, 229 F.2d 16 (1956). Cert. denied 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492. This was held in the absence of any showing of conflict of interest among the several defendants.

To the same effect is Mohler v. United States, 312 F.2d 228 (7th Cir. 1963). Cert. denied 374 U.S. 854, 83 S.Ct. 1922, 10 L.Ed.2d 1074 (1963). Codefendants in a counterfeit securities case were represented by one appointed counsel. On appeal the Circuit Court concluded that since there had been no objection by the defendants and there was no evidence of conflict of interest, the appointment was proper.

"The district court properly concluded that there was no showing of prejudice to appellant in the appointment of the same counsel to represent him along with Carter. Quite to the contrary, the transcript of the record shows that appellant was extended every right to counsel at each step of the proceeding and was correctly and fully advised of his constitutional rights throughout. * * * *" (312 F.2d 228 at 230).

■■■ Petitioners argue that they were not advised at the time of their arraignment that they were entitled to be represented by court appointed counsel at public expense and that the appointment of their attorney was not accomplished more than twenty-four hours prior to their trial. This is true, but there is no necessity of advising a defendant who appears on arraignment with retained counsel that he is entitled to have court appointed counsel. The attorney who was appointed to represent the defendants had prepared the case for trial, was ready to try the case and would have proceeded with the trial as retained counsel if he had secured the expected retainer. He did not receive the retainer and was appointed by the Court. He was certainly as well informed and as well able to proceed with the trial as appointed counsel as if he had been paid a retainer on the morning of the trial. I can see nothing wrong with this procedure and feel that the requirements of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963) have been completely met in this case.

C. 3 and 4. ILLEGAL ARREST AND DETENTION.

■■■ Mr. Draper was arrested in Seattle by the Seattle police on the strength of the warrant issued by the Spokane Justice of the Peace. In an ingenious argument Draper states that the Justice of the Peace does not have original jurisdiction of the crime of rob-

bery. Therefore, since he had no jurisdiction of the crime he could not issue the warrant of arrest. That if he did have jurisdiction to issue the warrant petitioners were tried in that court and were twice in jeopardy. If the Justice of the Peace did not have jurisdiction of the offense, the warrant of arrest was improperly issued.

The Washington statute, RCW 10.16.-010 provides that a Justice of the Peace shall issue a warrant for the arrest of anyone alleged to have committed a criminal offense.

RCW 10.34.010 allows the officer to whom the warrant is directed to pursue and apprehend the person against whom the warrant is issued. He may be pursued in any county of the state. RCW 10.31.060 allows a warrant to be telegraphed to any officer who then has the same authority to arrest as the officer holding the original warrant.

■ Since the arrest would appear to be lawful and in full compliance with statute the argument of petitioners falls. Further, it is stated in State v. Ryan, 48 Wash.2d 304, 293 P.2d 399 (1956) that even though an arrest may be invalid that would not be grounds for the dismissal or quashing of a criminal prosecution. Such would appear to be the case here. In other words, petitioner Draper could not allege or assert a denial of due process if the state law was properly applied. In the Ryan case the Supreme Court stated:

"Where, for any reason, an arrest is invalid, but the defendant enters a plea of not guilty and is in court on the day of trial, the court has jurisdiction of his person. * * Where the court has jurisdiction of the person of a defendant, it is not a ground for quashing or dismissing a criminal prosecution that he was not lawfully arrested. * * * "

■ The Supreme Court in United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) holds that the law of the place where an arrest is made shall determine its validity. It would appear that Mr. Draper's arrest and detention in Seattle was entirely in accord with state law, and if it was not he cannot now attack the validity of that arrest in an effort to secure his release or to claim that he was deprived of due process. Likewise, the Washington Supreme Court has not granted relief when a defendant was detained before arraignment. The detention of petitioner Lorentzen from July 5 until the arraignment on August 4, and the detention of petitioner Draper from July 12 until the arraignment on August 4 was not illegal.

"We see nothing improper in the arraignment of the appellant two weeks after his arrest and twelve days after filing of the information." State v. Manning, 57 Wash. 2d 327, 329, 356 P.2d 721, 722 (1960).

In State v. Lane, 37 Wash.2d 145, 222 P.2d 394 (1950), the defendant was arrested on July 4. He was arraigned on September 12 following, which was after the jury had been empaneled. The conviction was sustained.

I detect no violation of a Federal constitutional right in the problems presented under the illegal arrest and detention contentions made by petitioners. This is a matter of state law and that state law has been interpreted by the Washington State Supreme Court against the contentions of the petitioners. These interpretations are binding on this Court.

D. 5 and 6. ILLEGAL JUDGMENT AND SENTENCE.

■ The petitioners here raise the same point as has been before this Court on a number of occasions. They contend that they were sentenced on a conviction of robbery to twenty years and that the sentence is illegal and improper, it should be for a period of ten years under RCW 9.92.010, which provides that on conviction of a felony for which no penalty is specified, the penalty shall be ten years imprisonment.

The robbery statute, RCW 9.75.010, provides no maximum penalty but provides a minimum penalty.

RCW 9.95.010 provides that the Judge of the Superior Court shall not fix a minimum but shall fix a maximum only.

The petitioners argue from these statutes that RCW 9.95.010 has in effect repealed the penalty provisions in the robbery statute and that therefore no penalty is provided for its violation and there should be a sentence of not more than ten years.

This contention was persuasive on the trial court in Alderman v. Timpani, 56 Wash.2d 20, 351 P.2d 163 (1960). In that case against the superintendent of the Washington State Reformatory at Monroe the inmate was successful in the trial court in his bid to set aside the sentence. The Supreme Court, however, reversed the trial court and held that the twenty year sentence for robbery was a proper one, even though there was no maximum set in the statute and there was a minimum only.

■■■ This contention appears to raise no Federal question. This is a matter of interpretation of state statutes, which is properly left to the state courts. Their interpretations are binding on Federal courts.

"* * * But this contention as to New York law has previously been rejected by the State's highest court, in People ex rel. Wachowicz v. Martin, 293 N.Y. 361, 57 N.E.2d 53, [154 A.L.R. 1128], and was again rejected by the New York courts in this case. Their decision on such a state question is final here. In re Duncan, 139 U.S. 449, 462, [11 S.Ct. 573, 577, 35 L.Ed. 219]; West v. State of Louisiana, 194 U.S. 258, 261, [24 S.Ct. 650, 651, 48 L. Ed. 965]." Paterno v. Lyons, 334 U.S. 314, 318–319, 68 S.Ct. 1044, 1046, 92 L.Ed. 1409 (1948).

The Ninth Circuit applies this principle to habeas corpus petitions submitted by state prisoners.

"It is fundamental that the interpretation of local law by a state's highest tribunal is binding upon the Federal courts in a habeas corpus proceeding. Paterno v. Lyons, 334 U.S. 314, 319, 68 S.Ct. 1044, 92 L. Ed. 1409." Mason v. Dunbar, 317 F.2d 358, 359 (9th Cir. 1963).

Also see the following cases:

Wright v. Rhay, 316 F.2d 737 (9th Cir. 5/1/63), involving the same issues presented here.

Sires v. Cole, 314 F.2d 340 (9th Cir. 1963), and Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270, 48 A.L.R. 1102 (1926).

As to the contention of the unconstitutionality of RCW 9.95.010 I cannot feel that this presents a Federal question. The state statute is involved and it has been upheld in rulings by the state court.

RCW 9.95.010 was Section 2 of Chapter 114, Laws of 1935. This law contained the provision that the trial court could set the maximum sentence only in certain cases. Section 2 of Chapter 133 of the Laws of 1955 enacted RCW 9.95.010 in its present form. It contains exactly the same wording as that part of the 1935 Session Laws which was repealed. Therefore, this sentencing statute was in full force and effect at the time the petitioners were sentenced in 1960. Again I repeat there is no Federal question involved on this particular subject.

E. 7, 8 and 9. SUFFICIENCY OF THE TWO COUNT INFORMATION.

■■■ Petitioners argue that the information is void on its face because it charges the defendants with robbing two nonexistent corporations. There is nothing on the face of the indictment that shows that the corporations are nonexistent. This argument goes to the weight and admissibility of the evidence and the sufficiency of it to sustain the conviction of the defendants. These are matters which are not to be reviewed on habeas corpus. Miller v. Oberhauser, 293 F.2d 29 (9th Cir. 1961); United States ex rel. Brogan v. Martin, 238 F.2d

236 (3rd Cir. 1956), cert. denied 351 U.S. 928, 76 S.Ct. 785, 100 L.Ed. 1457 (1956).

 It is true that the facts which are alleged in the information must be sufficient to charge a crime in the words of the statute. If it does not, the sentence is void. In re Sorenson v. Smith, 34 Wash.2d 659, 209 P.2d 479 (1949). The information here in this case did charge the petitioners with robbing two motels. The ownership of the money or property taken is not a question that will be passed on in this habeas corpus proceeding. The corporate status of the businesses or the individual status is not something that will be passed on here, and is a matter that will have to be determined on the trial of the case or on the appeal of petitioners from their conviction.

The petitioners cite two cases, State v. Dodd, 84 Wash. 436, 147 P. 9 (1915), and State v. Rasmussen, 125 Wash. 176, 215 P. 332 (1923). They claim that on the authority of these two cases the two charges of robbery cannot be joined in one information and that the state should therefore be required to elect. These two cases were decided prior to the enactment of Chapter 109, Section 1, Laws of 1925. It is now codified as RCW 10.37.060, which provides as follows:

> "When there are several charges against any person, or persons, for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts; and, if two or more indictments are found, or two or more informations filed, in such cases, the court may order such indictments or informations to be consolidated."

This is in effect the same procedure allowed by Rule 8, Federal Rules of Criminal Procedure, 18 U.S.C.A. The joinder of separate offenses in separate connected charges in the same information is approved in State v. McCabe, 146 Wash. 626, 264 P. 15 (1927); State v. Brunn, 145 Wash. 435, 260 P. 990 (1927). State v. Harkness, 196 Wash. 234, 82 P.2d 541 (1938) involved crimes committed by different defendants independently at different times. This contention involves the interpretation of state law and is not a Federal question.

The petitioners' applications for writs of habeas corpus will be denied. Respondent's counsel is asked to prepare orders in each case denying the applications and dismissing the petitions.