[Crim. No. 22856. Second Dist., Div. Five. June 29, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH BARRY KURLAND, Defendant and Appellant.

## Counsel

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

ASHBY, J.—By information appellant was charged in eight counts with eight violations of Business and Professions Code section 4390, alleging that he did "fraudulently make, pass, utter and publish a certain fictitious prescription for methamphetamine, knowing said prescription to be fictitious." Appellant pleaded not guilty and not guilty by reason of insanity. Trial by jury and the right to confront witnesses were waived, and the cause was submitted on the testimony contained in the transcript of the preliminary hearing plus testimony by appellant in his own behalf. The court found appellant guilty as charged. The plea of not guilty by reason of insanity was withdrawn and appellant was granted probation on various terms and conditions. This appeal is from the judgment (order granting probation).

Appellant was a doctor, licensed to practice medicine since 1964. Beginning in July of 1971 he experienced difficulty prescribing drugs for patients because of delays involved in processing his application for a certificate from the Bureau of Narcotics and Dangerous Drugs authorizing him to dispense and prescribe restricted drugs under the Federal Drug Abuse Prevention and Control Act of 1970.[1] He did not receive the certificate authorizing him to prescribe such drugs until Septembre 17, 1971.[2] He

[1]Pub. L. No. 91-513, title II, 84 Stat. 1242, 21 U.S.C. § 801 et seq.

[2]Appellant had allowed his narcotics registration under prior federal law to expire, and had not dispensed any narcotics for some time.

was also unable to purchase such drugs wholesale for use in his office until he received the required order forms from the Bureau of Narcotics and Dangerous Drugs sometime after that date.

Between September 4, 1971, and December 24, 1971, Seymour Hersch, a pharmacist, filled eight prescriptions for methamphetamine which were signed by appellant. The prescriptions were made out to Dennis Herrin, Arthur Berman, Alice Cowells,[3] Larry Gottham, and Suzanne Nelson (three prescriptions). In each case the order was picked up by appellant.

The prosecution introduced evidence that these persons did not exist. The address on the prescription for Dennis Herrin was nonexistent. Another person had lived for two years at the address given for Arthur Berman, and he had never heard of Berman. At the address given for Alice Cowells, the person who had managed that apartment building for two years had never heard of her. The addresses for Leonard Kramer and Larry Gottham were nonexistent. Another woman had lived since August 1971 at the address given on the Suzanne Nelson prescriptions, and she had never heard of Nelson.

Appellant testified that Dennis Herrin, Alice Cowells, Leonard Kramer and Suzanne Nelson were real persons and were his patients at the time he signed the prescriptions, but he produced none of these persons as witnesses nor did he produce their medical records. Arthur Berman was not appellant's patient at that time, and the prescription in Berman's name was not for him. Larry Gottham was not a patient of appellant's, and the prescription in his name was intended for use by appellant's father. Appellant testified that of the drugs he picked up, some were used by himself and others were delivered to the persons for whom he had prescribed them.

The evidence amply supports the conclusion that in order to obtain a supply of amphetamines to dispense in his practice and for use by himself appellant issued prescriptions for fictitious patients. It is clear that in using this method of acquiring restricted dangerous drugs, appellant was acting unlawfully. Appellant's method of evading the Federal Drug Control Act was specifically prohibited by regulations of the Bureau of Narcotics and Dangerous Drugs of the United States Department of Justice. Title 21 of the Code of Federal Regulations section 306.04(b) provides: "A prescrip-

---

[3]Respondent notes in his brief a discrepancy between the date charged in count III (Sept. 24, 1971) and the date proved at the preliminary hearing as to the Alice Cowells prescription (Dec. 24, 1971). The record on appeal does not show that appellant objected to this variance between pleading and proof. Appellant submitted the cause on the preliminary hearing transcript as to all of the counts and thus waived objection to this minor defect in the information. (*People* v. *Braddock*, 41 Cal.2d 794, 799-800 [264 P.2d 521], cert. den. 348 U.S. 837 [99 L.Ed. 660, 75 S.Ct 27].)

tion may not be issued in order for an individual practitioner to obtain controlled substances for supplying the individual practitioner for the purpose of general dispensing to patients." The California Attorney General long ago reached a similar conclusion in construing a statute relating to the administration of hypnotic drugs by physicians to their patients. Volume 18 of Opinions of the Attorney General (1951) at page 212, states: "Nor may [the physician], by issuing a prescription, obtain a supply of hypnotic drugs and then furnish such drugs to his various patients."

The question in this appeal, however, is whether appellant's conduct was prohibited by the statute under which he was convicted, Business and Professions Code section 4390. That section provides: "Every person who signs the name of another, or of a fictitious person, or falsely makes, alters, forges, utters, publishes, passes, or attempts to pass, as genuine, any prescription for any drugs is guilty of a forgery and upon conviction thereof shall be punished by imprisonment in the state prison for not less than 1 year nor more than 14 years, or by imprisonment in the county jail for not more than 1 year.

"Every person who has in his possession any drugs secured by such forged prescription shall be punished by imprisonment in the state prison for not less than one year nor more than six years, or by imprisonment in the county jail for not more than one year."

Appellant contends that Business and Professions Code section 4390 is applicable only to a person who *signs* the name of another or of a fictitious person, and that since he was a licensed physician who signed his own name to the prescription, the statute is not applicable to his conduct. We think that appellant's reading of the statute is too narrow, and that appellant was properly convicted under section 4390. It may be conceded that appellant's conduct does not fall within the first phrase of section 4390, referring to "[e]very person who signs the name of another, or of a fictitious person. . . ." Appellant ignores the language of the rest of the section, however, referring to a person who "falsely makes, . . . passes, or attempts to pass, as genuine, any prescription for any drugs. . . ." Under the facts at bench, appellant falsely made and passed as genuine a prescription which was not genuine because it was issued in the name of a fictitious patient.

■ The elements of violation of Business and Professions Code section 4390 are not identical to the elements of forgery as it defined in the Penal Code, and therefore we are not required to interpret section 4390 in the same way that Penal Code section 470 has been construed. (See *People* v. *Jack,* 233 Cal.App.2d 446, 458 fn. 9 [43 Cal.Rptr. 566].) Business and

Professions Code section 4036 defines "prescription" to mean "an oral order given individually *for the person for whom prescribed,* directly from the prescriber to the furnisher, or indirectly by means of a written order, signed by the prescriber, and shall bear the name and address of the prescriber, his license classification, *the name and address of the patient,* the name and quantity of the drug or device prescribed, directions for use, and the date of issue. . . ." (Italics added.) The prescriptions issued by appellant in the instant case were not "genuine" prescriptions in that they did not satisfy the above definition of prescription. ▇ They were not "for the person for whom prescribed" and they did not contain the (true) name and address of the person for whom the drugs were prescribed. Appellant therefore falsely made and passed as genuine prescriptions which were not genuine and was guilty of violating Business and Professions Code section 4390.[4]

This conclusion is supported by the recent case of *Baker* v. *Superior Court,* 24 Cal.App.3d 124 [100 Cal.Rptr. 771]. In that case a doctor issued prescriptions for dangerous drugs to patients who were in fact undercover operators, without any showing of medical need for such drugs. The Court of Appeal issued a peremptory writ prohibiting the superior court from proceeding to trial on the charges that the doctor "furnished" restricted dangerous drugs in violation of former Health and Safety Code section 11912. The court held that Health and Safety Code section 11912 was not applicable to the defendant's conduct, and referred to *People* v. *Jack, supra,* as a case where "the prosecution was under section 4237 of the Business and Professions Code (forging prescriptions) which is precisely the code to which the state should resort in this case." (24 Cal.App.3d at p. 127.)

Here the prosecution was brought under the applicable section of the Business and Professions Code. Appellant's conduct more logically falls under section 4390 than under section 2390 (use of drugs or alcohol by physician to such extent as to be injurious to him or to his ability to practice medicine with safety to the public) or section 2399.5 (prescribing dangerous drugs without examination of patient or medical indication), cited by appellant. Former Business and Professions Code section 4237, to which *Baker* referred, provided for punishment of "[e]very person who forges or increases the quantity of dangerous drugs in any prescription or who issues

---

[4]Appellant's conduct occurred prior to the passage of the Uniform Controlled Substances Act. Statutes of 1972, chapter 1407, section 3. Under that act present law provides several additional means of prosecuting the issuance of false or fictitious prescriptions, e.g., Health and Safety Code sections 11154, 11157, 11173, and 11174.

a prescription bearing a forged or fictitious signature for any dangerous drug as defined herein, or who obtains any dangerous drug by any forged, fictitious or altered prescription, or who has in possession any dangerous drug secured by such forged, fictitious, or altered prescription, . . ." Business and Professions Code section 4390 is both a companion and a successor statute[5] to former section 4237, and is applicable here.

We therefore hold that appellant's conduct was prohibited by Business and Professions Code section 4390 and that the evidence is sufficient to support appellant's conviction.[6]

The judgment (order granting probation) is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 26, 1973, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 22, 1973.

---

[5]Both sections were enacted together (Stats. 1955, ch. 550, pp. 1048, 1054, § 3), and the second paragraph of section 4390 was added when section 4237 was repealed. (Stats. 1965, ch. 1822, pp. 4206, 4211, §§ 32, 59.)

[6]A similar result was reached by the Supreme Court of Washington in *State* v. *Harkness* (1938) 196 Wash. 234 [82 P.2d 541]. In that case the court held that a physician who issued a prescription in the name of a fictitious patient, knowing and intending that someone other than the person named would procure the drugs from the pharmacist, was guilty of falsely making a prescription under a statute prohibiting any person to "falsely make, forge or alter" a physician's prescription. (*Id.*, 82 P.2d at p. 543.)