[Crim. No. 32420. Second Dist., Div. Five. May 1, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES STONEWALL JACKSON et al.,
Defendants and Appellants.

**COUNSEL**

Richard K. Cacioppo and Cynthia K. Cohan, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Dixie Moe, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—By information, appellant Jackson was charged with six counts of violation of Business and Professions Code section 4390, passing of a forged prescription; three counts of violation of Penal Code section 496, receiving stolen property; one count of violation of Health and Safety Code section 11368, possession of a narcotic by use of a forged prescription; and one count of violation of Penal Code section 475a, possession of a completed check with intent to defraud. The Penal Code section 475a count and one of the Penal Code section 496 counts were dismissed pursuant to a Penal Code section 1118 motion after trial. Jackson's motion for severance of his trial from that of his codefendant was denied by the trial court. Extrajudicial statements of codefendant Hattaway were admitted into evidence over Jackson's objections and a motion for a mistrial based on the admission of those statements was denied. Jackson was convicted of all the remaining counts.

Appellant Hattaway was charged by information with one count of violation of Business and Professions Code section 4390, three counts of violation of Penal Code section 496, and one count of violation of Penal Code section 475a. During jury trial, Hattaway's motions to dismiss the

charges and suppress his extrajudicial statements on the basis of failure to establish *corpus delicti* were denied. Hattaway's motion after trial, to dismiss pursuant to Penal Code section 1118, was granted as to all counts except the violation of Business and Professions Code section 4390. He was found guilty of that count.

## FACTS

The facts of this case, insofar as necessary to discuss the matters raised on appeal, are as follows:

On August 23, 1977, appellant Jackson entered the Grand Pharmacy in Glendora, California. He presented two prescriptions for drugs and was told by the pharmacist to return the next day to pick up the merchandise. Shortly after Jackson left the pharmacy, a young black male entered the pharmacy and left a prescription for drugs for one S. Young Emerson. He too was told to return the next day to pick up the goods.

On August 24, 1977, Jackson drove to the pharmacy with appellant Hattaway as a passenger. Jackson entered the pharmacy, paid for the two prescriptions he had left the day before, and left the store with the drugs in a small bag. Once outside, he approached his car in which Hattaway was sitting, waved the bag, did a small dance and went into a nearby market. Appellant Hattaway then left the vehicle and went into the pharmacy. He requested a prescription for Dorothy Emerson or Mrs. Emerson who he said was his wife. Hattaway was told that there was no prescription under that name, whereupon he appeared puzzled and left the store. Both appellants drove away in Jackson's vehicle. After a short distance they were stopped by a police officer who had been observing their activities at the pharmacy. This officer had been informed by the pharmacist about the latter's suspicions concerning the prescriptions left by Jackson and the young black male. The officer arrested both appellants and later searched the car pursuant to a warrant. Found in the car were two bottles of drugs from the Grand Pharmacy, and various items of stolen property, including a passport, credit cards and checks belonging to an S. Y. Emerson.

On August 25, 1977, Hattaway, after being informed of and waiving his constitutional rights, told a police officer the following: That Jackson had told him to come over to his house if he wanted to make some money; that he went to Jackson's house where Jackson gave him some speed (amphetamine) and a hypodermic needle; that they then drove to the

Grand Pharmacy where Jackson told him to pick up a prescription for a Dorothy Emerson; and that he left the pharmacy when there was some confusion over what name the prescription was under. Hattaway also told the officer that he was a "runner for scrips [prescriptions]," that he was to receive a portion of the drugs he obtained, and that he sold drugs and false identifications for a living.

## CONTENTIONS

Appellant Hattaway's first contention is that the trial court erred in admitting his extrajudicial statements before establishing the corpus delicti of the alleged offense, a violation of Business and Professions Code section 4390.[1] Hattaway's motion to suppress those statements was denied by the trial court.

Appellant Hattaway correctly states the rules that a prima facie showing of the corpus delicti of the crime charged must be made before a defendant's extrajudicial statements may be received into evidence, and that the corpus delicti must be proved entirely independently and without considering those statements. (*People* v. *Cantrell* (1973) 8 Cal.3d 678-680 [105 Cal.Rptr. 792, 504 P.2d 1256], disapproved on another point in *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324 [headnote 1a, 1b] [149 Cal.Rptr. 265, 583 P.2d 1308]; *People* v. *Mehaffey* (1948) 32 Cal.2d 535 [197 P.2d 12].) Appellant Hattaway is incorrect in his assertion that these rules were not complied with in the present case.

Hattaway was charged with a violation of Business and Professions Code section 4390 which occurred on or about August 23, 1977. The facts, *ante*, set forth the evidence which was introduced prior to the admission of Hattaway's extrajudicial statements. From this sequence of events it could reasonably be inferred that Jackson and the unidentified black male were acting in concert to pass false prescriptions; that the prescription left for S. Y. Emerson was a false one; that Jackson and Hattaway had arranged to pick up the products of the false prescriptions on August 24; and that Hattaway intended to do so when he asked for the prescription for his wife, Dorothy or Mrs. Emerson. Corpus delicti may be established by slight evidence, by circumstantial evidence, and by reasonable inferences to be drawn from such evidence. (*People* v. *Cantrell, supra,* 8 Cal.3d at p. 679.) Moreover, it is not necessary to

---

[1]The pertinent part of Business and Professions Code section 4390 reads as follows: "Every person who signs the name of another, or of a fictitious person, or falsely makes, alters, forges, utters, publishes, passes, or attempts to pass, as genuine, any prescription for any drugs is guilty of a forgery. . . ."

connect the particular defendant with the perpetration of the crime in order to establish the corpus delicti. (*People* v. *Mehaffey, supra,* 32 Cal.2d at p. 545.) ▆▆ It is clear, therefore, that the corpus delicti of a violation of Business and Professions Code section 4390 was established prior to the introduction of Hattaway's extrajudicial statements.

Appellant Hattaway's second contention is that the evidence, even including his extrajudicial statements, failed to establish a violation by him, of Business and Professions Code section 4390. For Hattaway to prevail with this argument, it would have to appear upon an examination of all the evidence, viewed in a light most favorable to the respondent, that upon no reasonable hypothesis was there substantial evidence to support the verdict. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) In the present case, reasonable inferences regarding Hattaway's conduct as detailed in the preceding paragraph, when bolstered by his extrajudicial statements (see Facts, *ante,* pp. 559-560), leave little doubt about the nature and purpose of that conduct. The issue, however, is whether that conduct constituted a violation of Business and Professions Code section 4390 as a matter of law.

Appellant Hattaway asserts that the violation of Business and Professions Code section 4390 was completed upon the passing of the S. Y. Emerson prescription by the unidentified black male, and it was the latter who was properly answerable for the crime, not Hattaway. Respondent argues that Hattaway could reasonably have been found to have aided and abetted Jackson in the passing of the prescription and thus was properly found guilty as a principal, even though he did not directly commit the act constituting the offense. (Pen. Code, § 31.) We concur with respondent's interpretation of the facts and add another. A violation of Business and Professions Code section 4390 can consist of "uttering" a false prescription for drugs, as well as passing such a prescription.[2] ▆▆ The word "utter" means to use or *attempt to use* an instrument, whereby or in connection with which, a person asserts or represents to another, directly or indirectly, expressly or impliedly, by words or conduct, that the instrument is genuine. (CALJIC No. 15.25 (3d ed. 1970).) There was substantial evidence tending to prove that Hattaway attempted to use the false S. Y. Emerson prescription to obtain drugs, by asserting with his words and conduct that it was genuine. We therefore find that the verdict of guilty for appellant Hattaway's violation of Business and Professions Code section 4390 must stand.

[2]See footnote 1, *ante,* page 560.

Appellant Jackson contends that the court erred in denying his motion to sever his trial from that of his codefendant Hattaway, and in admitting Hattaway's extrajudicial statements. The extrajudicial statements made by Hattaway are detailed in the fourth paragraph of "Facts." Jackson relies on *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], which involved an invalid confession of a defendant, received into evidence, which incriminated a codefendant. The defendant who made the confession did not testify at trial so the incriminating statements were not subject to cross-examination. The court held that there was substantial risk that the jury, despite instructions to the contrary, considered the confession in determining the codefendant's guilt and that therefore the latter's constitutional right of cross-examination was violated. (*Ibid.*) Jackson also relies on *People* v. *Aranda* (1965) 63 Cal.2d 518, 524-531 [47 Cal.Rptr. 353, 407 P.2d 265], which also involved an invalid confession, and in which the court established judicially declared rules of conduct regarding the admission of an extrajudicial statement of one defendant that implicates a codefendant. In essence, these rules permit a joint trial only if the incriminating extrajudicial statements are excluded or if the incriminating parts thereof are effectively deleted. (*Id.,* at p. 530.)

Since, in the present case, Hattaway's extrajudicial statements were admitted without deletions and Jackson's motion for a severance of trials was denied, whether there was an *Aranda-Bruton* error turns on whether Hattaway's statements substantially incriminated Jackson. Whether they did so must be determined in light of the other evidence. ■ It is not *Aranda* or *Bruton* reversible error to admit into evidence, under proper limiting instructions to the jury, the extrajudicial statements of one defendant which link a codefendant to the commission of a crime, if there is substantial evidence, apart from the statements, linking that codefendant to that crime. (*People* v. *Epps* (1973) 34 Cal.App.3d 146, 154-161 [109 Cal.Rptr. 733]; *People* v. *Romo* (1975) 47 Cal.App.3d 976, 982-984 [121 Cal.Rptr. 684].) In the present case, the record reflects that the jury was instructed to disregard the extrajudicial statements of Hattaway insofar as they reflected on the guilt or innocence of Jackson.[3]

---

[3] "THE COURT: . . . . . . . . . . . . . . . . . . . . . . . . . .
"At this time I'm going to instruct that with respect to any statements made by, in this case, Mr. Hattaway to Officer Pfeiffer, and to which Officer Pfeiffer will now testify, those statements, to the extent that they mention Mr. Jackson, are limited solely to Mr. Hattaway; and any evidence of Mr. Jackson that comes in, you're to disregard and not consider in determining Mr. Jackson's guilt or innocence on these charges.
"The statement is solely limited to Mr. Hattaway. And it is not admitted as to Mr. Jackson. Although you'll hear the statements and they may concern Mr. Jackson, you are not to consider them. That's the law on the issue of the statement by a codefendant."

We find substantial evidence, apart from Hattaway's statements, linking Jackson to each crime of which it can reasonably be said that Hattaway's statements incriminated him. These include all counts involving the two prescriptions passed by Jackson at the Grand Pharmacy, and the prescription passed by the unidentified black male at the same place. We need not reiterate that evidence here as it is adequately detailed in the first two paragraphs of "Facts." The last mentioned count needs some discussion, however.

Hattaway and Jackson were charged with a violation of Business and Professions Code section 4390 which occurred on or about August 23, 1977, and which involved a prescription in the name of S. Y. Emerson. The first two paragraphs of the facts reflect the evidence which was introduced attesting to the commission of that offense. From the sequence of events it could reasonably be inferred that Jackson and the unidentified black male were acting in concert to pass false prescriptions; that the prescription left for S. Y. Emerson was a false one; that Jackson and Hattaway had arranged to pick up the products of the false prescriptions on August 24; and that Hattaway intended to do so when he asked for the prescription for his wife, Dorothy or Mrs. Emerson. We thus see substantial evidence of this violation of Business and Professions Code section 4390 by Jackson.

In light of the substantial evidence inculpating Jackson, and the limiting instructions given the jury regarding the extrajudicial statements of Hattaway, we conclude that those statements did not substantially incriminate Jackson in a manner requiring reversal. Conceding error, it was harmless beyond a reasonable doubt.

The judgments are affirmed.

Hastings, J., concurred.

**KAUS, P. J.**—I dissent. I cannot conclude that the record contains sufficient substantial evidence to uphold the conviction on count 4—the count involving the Emerson prescription: there simply was no evidence that the prescription was other than genuine. (Cf., *People* v. *Kurland* (1973) 33 Cal.App.3d 197, 200-201 [108 Cal.Rptr. 874, 117 Cal.Rptr. 216].)

The majority bases its conclusion that the evidence was sufficient on three bits of circumstantial evidence: (1) the discovery in Jackson's car of

"stolen" items apparently belonging to an S. Y. Emerson; (2) the extrajudicial admissions of Hattaway; and (3) the cooperation between Hattaway and Jackson who had just engaged in a transaction involving prescriptions which were proved to have been forged. None of these, considered alone or in the aggregate, constitutes substantial evidence that the Emerson prescription was false.

1. There was no evidence that the Emerson passport, credit cards and checks were stolen. Indeed, the prosecutor conceded that fact when the receiving stolen property charge based on those documents was dismissed.

2. While Hattaway's extrajudicial admissions implicated him in some sort of nefarious dealings with Jackson concerning the drugs that had been ordered by way of the Emerson prescription, absent bald speculation that fact in no way proves that the Emerson prescription was false.

3. The prosecution presented a handwriting expert who testified that the two prescriptions which had been personally passed by Jackson were forgeries. No comparable evidence regarding the Emerson prescription was presented. While the interaction between Hattaway and Jackson may have raised a strong suspicion that the third prescription was also forged, such suspicion cannot substitute for solid proof of guilt. I would reverse count 4.

I also have my doubts on the *Aranda-Bruton* point. The majority holds that there was no *Aranda-Bruton* error because there was substantial evidence linking Jackson with the crime other than Hattaway's extrajudicial admissions. In support of this proposition, the majority cites *People* v. *Epps* (1973) 34 Cal.App.3d 146 [109 Cal.Rptr. 733] and *People* v. *Romo* (1975) 47 Cal.App.3d 976 [121 Cal.Rptr. 684]. From my reading of *Epps* and *Romo*—two doubtful cases—the majority overstates their effect. In *Epps*, the extrajudicial statements showed only that the codefendants were acquainted with each other. In this they were cumulative. Further they did not directly implicate the codefendant who had not made the admissions in the crime. In *Romo,* the principle adverted to is merely a dictum.

The situation here is vastly different from that in *Epps*. Hattaway's admissions clearly and directly implicated Jackson in the charged crimes. Because the court denied Jackson's alternative motion to sever or strike

the parts of the statements which implicated him, and because Hattaway did not testify, there was *Aranda-Bruton* error. The other evidence of guilt may have rendered the error harmless—the present posture of the case makes it unnecessary for me to decide that question—but it did not make the error nonexistent.