[No. D038540. Fourth Dist., Div. One. Dec. 6, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL REGINALD PUGH, Defendant and Appellant.

**COUNSEL**

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Darrell Reginald Pugh was convicted of forgery and the fraudulent uttering of a check. Pugh was granted probation. He appeals, arguing the evidence was insufficient to support his convictions, the trial court erred in failing to sua sponte instruct concerning a defense to the uttering charge and the prosecutor engaged in misconduct.

## FACTS

### A. *Prosecution Case*

In February 2001 Connie Sagredo placed an advertisement in the newspaper offering to sell her 50-foot cabin cruiser. On Monday, February 26, appellant called Sagredo expressing an interest in buying the boat. The two discovered they attended the same church. Based on that connection Sagredo trusted appellant. Later, on February 26, Sagredo's son Derek Morris showed appellant the boat. Appellant wanted to buy it. He gave Morris two checks, one for $500, the other for $10,000, both dated February 28.

Appellant also gave Morris a note for Sagredo. The note asked that she wait until Wednesday, i.e., February 28, to deposit the $500 check and until March 10 to deposit the $10,000 check. Appellant agreed to pay the balance of the purchase price before March 25. The note ended with appellant's statement that if Sagredo needed an additional $2,000 to $4,000 in light of his inability to pay cash, he would pay it.

On February 28 appellant went to Sagredo's home. He gave her $500 in cash, took back the check in that amount and told her she could deposit the $10,000 check on March 10. Sagredo did not give appellant the keys to the boat, or its title or registration. She told appellant he could not live on the boat.

On March 10 Sagredo called appellant's bank and discovered the funds in his account were insufficient to cover the check. Sagredo called appellant. He stated he would need a few more days. Sagredo called the bank over the next several days and was told each time that appellant's funds were insufficient to cover the check. She called appellant. He stated he would make it "right." After appellant failed to keep an earlier appointment, the pair met at a restaurant. Appellant did not have the money. Citing problems with the boat, he asked Sagredo to lower the purchase price. Desperate for money, she agreed to do so. Sagredo wrote out and signed a document stating the new price. When Sagredo asked for the money, appellant stated he would need a few more days. Sagredo agreed.

The pair arranged to meet again at the restaurant in several days. Appellant did not appear. The two made repeated arrangements to meet. Appellant did not keep the appointments. On April 4 Sagredo received a call from a friend that someone was on her boat. Sagredo called the police.

On April 4 Harbor Patrol Officer Richard Jordan picked up Sagredo and the two went to her boat. Robert Peterson was on the vessel making repairs. He explained that appellant had purchased the boat. Sagredo told the officer the boat was hers. Unsure who owned the vessel, Jordan gave his card to Sagredo and Peterson and asked that they provide him with documents supporting their claims of ownership.

On April 6 appellant contacted Jordan. Appellant told the officer he was the new owner of Sagredo's boat. Appellant showed Jordan a sales agreement for the boat dated February 2 indicating Sagredo as the owner and appellant as the buyer. Both appellant's and Sagredro's signatures were on the document. Appellant also showed the officer a copy of a small claims suit filed by him against Sagredo. It alleged Pugh gave $10,500 for the boat

and that Sagredo was unwilling to abide by the contract or return appellant's money. Based on the documents, the officer concluded appellant was the owner of the boat.

That evening Sagredo appeared at the police station with the title to the boat. When Jordan showed her a copy of the sales agreement provided by appellant, she stated she had never seen the agreement before and had not signed it.

Appellant later explained to investigators from the district attorney's office that he prepared the purchase agreement without Sagredo's knowledge and that he cut and pasted her signature onto it.

### B. *Defense Case*

Appellant testified in his own defense. He stated he planned to buy Sagredo's boat to live on. Sagredo suggested as early as February 28 that he move onto the boat and after a meeting on March 22, appellant understood he could do so. Appellant testified the purchase price of the boat was $17,500. It was agreed that if repairs to the engine were more than $2,000, the repair amount would be deducted from the price. By March 12 the cost of repairs had not been determined and appellant asked Sagredo not to cash the $10,000 check for a few days.

On March 31 appellant informed Sagredo that the boat needed a new engine and other repairs that would cost $18,500. Sagredo refused to allow him to deduct the cost of replacing the engine from the sale price and told him he could not live on the boat. On April 2 appellant sued Sagredo.

Appellant testified he prepared the documents he gave Officer Jordan to convince his mechanic that he could go on the boat without being accused of trespass. He admitted he cut and pasted Sagredo's signature on the document. He stated he was not trying to trick the police.

### DISCUSSION

### A. *Forgery*

■ Appellant notes he was convicted of forgery based on his preparation of a document that reflected the terms of his purchase of Sagredo's boat and having placed her signature on that document. He states there was insufficient evidence to support that conviction since there was no evidence appellant prepared the document with the intent to defraud. More specifically, he argues that there could be no intent to defraud since although he

prepared a false document, it nonetheless did nothing more than reflect the verbal contract he had with Sagredo. He also argues that the document was on its face so defective that it was incapable of defrauding anyone.

In determining whether the evidence is sufficient to support the verdict, we review the entire record, viewing the evidence in the light most favorable to the judgment, and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People v. Brown* (1995) 35 Cal.App.4th 1585, 1598 [42 Cal.Rptr.2d 155].)

Among other elements, a conviction of forgery requires the person utter, publish or pass, in this case, the purchase agreement with the specific intent to defraud another person. (Pen. Code, § 470, subd. (d); CALJIC No. 15.01.) An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment or suppression of the truth or by any artifice or act designed to deceive. (*People v. Booth* (1996) 48 Cal.App.4th 1247, 1253 [56 Cal.Rptr.2d 202].)

We agree with the Attorney General's position. While it is true that appellant and Sagredo had an agreement for the sale of the boat, the evidence indicates part of the agreement was that appellant not take possession of the craft until the full purchase price was paid. When a disagreement arose concerning appellant's right to possession, he presented to Officer Jordan the sales agreement he had manufactured along with other documents to prove his right to be on the boat. The purchase agreement was an artifice designed to deceive the officer into believing appellant had the right to possession of the boat.

Neither do we accept appellant's argument that the forgery was so defective on its face that it was as a matter of law incapable of defrauding anyone. The document may not have had a formal appearance and may have appeared incomplete. Nonetheless, appellant uttered it, along with other documents, and it was accepted by the officer as evidence of appellant's rights to possession of the boat. The purchase agreement was not so defective that as a matter of law it was incapable of supporting a fraud.

B. *Uttering a Check with Intent to Defraud*

Appellant argues there was insufficient evidence to support his conviction of issuing a check with the intent to defraud. Specifically, he

argues it was undisputed that when he uttered the $10,000 check, he informed Sagredo there were insufficient funds in the account to cover it and that he had a reasonable expectation that the check would be paid on the date he told her to present it. He notes both are defenses to the crime.

Conviction for a violation of Penal Code section 476a, subdivision (a), requires a person with the intent to defraud make, draw, utter or deliver, in this case, a check, knowing at that time there are insufficient funds for its payment. There is, however, no fraudulent intent if the maker informs the payee at the time the check is uttered that there are insufficient funds to pay the check. (*People v. Poyet* (1972) 6 Cal.3d 530, 536 [99 Cal.Rptr. 758, 492 P.2d 1150].) Neither is there fraudulent intent if the person uttering the check, while aware there are insufficient funds to cover it, believes sufficient funds will be in the account when the check is presented for payment. (*People v. Griffith* (1953) 120 Cal.App.2d 873, 880 [262 P.2d 355].)

There is no dispute that when appellant uttered the $10,000 check to Sagredo on February 26 he told her not to cash it until March 10, stating he was expecting a deal to close before that date. As to the uttering of the check on February 26, therefore, appellant could not be convicted of uttering a check to defraud since he told Sagredo there were insufficient funds at that time to cover it.

A dispute does exist, however, concerning events after March 10. Appellant's position was that he communicated with Sagredo and told her for various reasons not to cash the check. Sagredo on the other hand testified appellant sometime not long after March 10 told her to resubmit the check for payment. At that time appellant did not tell Sagredo there were insufficient funds to cover the check. By that time appellant by his own admission knew that his expected windfall was not forthcoming at least in the immediate future. In any event, his claim of expected funds was based solely on his own impeachable testimony and could be reasonably rejected by the jury.

■ "Utter" means to "use or *attempt to use* an instrument, whereby or in connection with which a person asserts or represents to another, directly or indirectly, expressly or impliedly, by words or conduct, that the instrument is genuine." (*People v. Jackson* (1979) 92 Cal.App.3d 556, 561 [155 Cal.Rptr. 89].) ■ After March 10 when appellant told Sagredo to resubmit the check, he uttered it. The evidence was sufficient to convict him of fraudulently uttering a check.

C.  *CALJIC No. 15.28*

Appellant argues the trial court erred in failing to instruct sua sponte in the term of CALJIC No. 15.28. That instruction tells the jury: "Even though a

person . . . [utters] . . . a [check] . . . knowing that at that time there are insufficient funds in the bank on which it is drawn to pay it, that person does not have the requisite specific intent to defraud if [he] . . . in fact has good reason to believe and actually does believe that it will be paid on presentment for payment."

As noted above since the undisputed evidence established a defense for any alleged violation of Penal Code section 476a, subdivision (a), occurring before March 10, i.e., appellant revealed his account was insufficient at that time to cover the check—the jury was instructed concerning that defense—any failure to instruct in the terms of CALJIC No. 15.28 was meaningless.

The instruction also was irrelevant to any post-March 10 action by appellant since his defense was not that he reasonably expected funds to be in the account when the check was presented but rather that he had told Sagredo not to submit the check for payment because of his cash flow problems and their dispute concerning the sale.

It was unnecessary the trial court instruct in the term of CALJIC No. 15.28.

D. *Prosecutorial Error*

Appellant contends that during argument the prosecutor misstated the law, misstated the facts and argued facts not in evidence. Respondent concedes instances of each in the prosecutor's argument. Respondent argues, however, any errors in doing so are not cognizable on appeal since no objection was made to them below and that, in any case, the errors were harmless.

" 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' " (*People v. Hill* (1998) 17 Cal.4th 800, 820 [72 Cal.Rptr.2d 656, 952 P.2d 673].) No assignment of misconduct or request for curative admonition is required if either would be futile or if the admonition would not have cured the harm. The lack of a request for a curative admonition is not a waiver of the issue on appeal if the trial court immediately overrules the objection and there is no opportunity to make such a request. (*Id.* at pp. 820-821.)

Appellant, who represented himself at trial, concedes no objection was made to the prosecutorial errors he now cites on appeal. He argues,

however, that comments by the trial judge before argument both discouraged him from making objections and suggested that any objections would be futile.

Because appellant was representing himself, the trial court explained the procedural aspects of argument, e.g., the prosecution would argue first and last. The court also explained what was proper and improper in argument, e.g., only matters admitted in evidence could be discussed in argument. In doing so, the court told appellant that if he went beyond the evidence, the prosecutor would object. The court also explained to appellant, a minister, that he would have to take care with biblical references since in some forms they were improper argument, would invoke an objection from the prosecutor which the court would sustain.

Appellant's claim that he was discouraged from objecting and led to believe any objection would be futile arises from a discussion by the court concerning calling persons liars. The court told appellant he was free to call witnesses liars but could not call the prosecutor a liar. The court explained that appellant could say the prosecutor had not proved the case she offered in opening statement but could not call her a liar. In his brief appellant states "the trial court's warning to appellant not to question the prosecutor's lies would reasonably have led appellant to infer that any objection to the prosecutor's misstatement of fact would be futile."

Nonsense. The court made clear that the argument of facts outside the record or misstatement of the evidence were objectionable and that when meritorious, such objections would be sustained. The court did not suggest in any way that appellant was foreclosed in any manner from addressing either in argument or by objection any improper argument. The court merely told appellant he could not in argument call the prosecutor a liar.

Self-representation has many pitfalls. Appellant has stumbled into one of them. Appellant's claims of error are not cognizable on appeal.

The judgment is affirmed.

Kremer, P. J., and McConnell, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 19, 2003.